In February, 1933, the Peoples Wayne County Bank of Hamtramck was closed by proclamation of the governor. Shortly afterward, a conservator was appointed; and an assessment of 100 per cent. was ordered levied on the capital stock of the bank. All of the bank stock was owned by the Detroit Bankers Company, a corporation, and its directors. While the stock was registered in the names of the directors, it appears that it was indorsed in blank by such directors and transferred to the Detroit Bankers Company; and was in reality owned by the company.
After the assessment, a plan of reorganization was formulated which was agreed to by 75 per cent. in amount of the depositors or creditors of the bank. This plan was approved by the governor, the banking commissioner, and the attorney general. On *Page 333 
October 23, 1934, the attorney general, acting on behalf of the banking commissioner, filed a petition in the Wayne circuit court for an order approving the plan of reorganization. On the filing of the petition, an order to show cause was issued returnable November 8, 1934, directed to the depositors and notifying them to appear if they had objection, and providing for publication of the notice of hearing and posting the same upon the doors of the bank. On the date set for hearing, the Detroit Bankers Company was in receivership. On the hearing of the order to show cause, the petition for reorganization according to the plan set forth in the petition was granted.
Four years later, on November 30, 1938, the receiver of the Detroit Bankers Company filed a petition to amend the order approving reorganization of the bank in order to provide that any surplus remaining after payment of the claims of the depositors of the bank should revert to the receiver of the Detroit Bankers Company. On July 18, 1940, the circuit court granted the petition, and from such order an appeal was taken by the Hamtramck Depositors Corporation and certain trustees, constituting the group that brought about the reorganization of the bank.
For an understanding of the issues on appeal, it is necessary to review in some detail the plan of reorganization and the proceedings on the hearing for reorganization.
The plan contemplated the appointment of three trustees who were to organize a new corporation to effect the reorganization of the bank. This new corporation was to be called the Hamtramck Depositors Corporation. The bank was to be reorganized with a capital of $200,000, divided into 2,000 shares of common capital stock having a par value *Page 334 
of $100 per share. The commissioner of banking was to collect a 100 per cent. assessment against all the stockholders of the bank; and the proceeds of such assessments were to be paid over to the bank, or its conservator, and constitute paid-in capital stock. Shareholders who paid the assessment were to be permitted to retain their stock. Shareholders who did not pay their assessments on or before the date upon which the capital of the bank would be finally determined by the commissioner would not be permitted to retain their stock, but collections thereafter made on such assessments were to be transferred to the Hamtramck Depositors Corporation. The assets of the bank were to be transferred to such corporation, which, in turn, was to pledge such assets with the Reconstruction Finance Corporation for a loan of more than a million dollars. The depositors corporation would then use the funds so borrowed to pay the bills payable of the bank, and to carry out the provisions of the agreement with the depositors. All of the depositors and creditors of the bank agreed to waive 50 per cent. of their claims against the bank in exchange for certificates of indebtedness issued to them by the depositors corporation. The balance of 50 per cent. of the claims of such depositors was to be paid in cash to the creditors, or made available for their withdrawal, upon the reopening of the bank.
The question arises with regard to the disposition of any surplus remaining after the Reconstruction Finance Corporation had been paid in full the amount of its loan to the depositors corporation, and after the depositors and creditors had been paid 50 per cent. of their claims upon reopening of the bank, as well as the balance of their claims represented by certificates of indebtedness, with interest.
The plan approved by the court provided: *Page 335 
"After Reconstruction Finance Corporation has been paid in full, the remaining transferred assets will be held by said depositors corporation and administered for the benefit of the waiving depositors and creditors under the terms of an agreement to be entered into between the bank and the corporation. This agreement will be approved as to form and substance by the commissioner and will, among others, contain provisions substantially as follows: * * *
"Upon the reopening of the bank, or as soon thereafter as possible, the corporation shall issue to each of the depositors and creditors who, either voluntarily or by operation of law, shall have waived 50 per cent. of their respective net unsecured claims against the bank, certificates of indebtedness representing the amount of their respective waivers. Thesecertificates will entitle the holders thereof to receive from the liquidation of the assets of the corporation, after all loans from the Reconstruction Finance Corporation shall have been paid in full, with interest and charges, a sum equal tosuch waived amount with interest thereon from the date ofcertificate at the rate of three per cent. per annum. These payments will be made ratably to certificate holders from time to time by the corporation out of the proceeds of such liquidation. The form of such certificates and the manner and time of payments of principal and interest due thereon shall be determined in the agreement between the bank and the corporation hereinbefore referred to."
Although the plan only provided that the waiving depositors receive 50 per cent. of their claims in cash, and payment of a like amount with interest, represented by a certificate, nothing was mentioned in the plan as to the disposition of the transferred assets after the claims of the Reconstruction Finance Corporation and the claims of the depositors had been paid in full. However, on the hearing before the court for approval of the plan, while the conservator *Page 336 
of the Peoples Wayne County Bank of Hamtramck was giving testimony and Mr. Sempliner, the attorney for the receiver of the Detroit Bankers Company, the real stockholder of the bank, was present, the following took place:
"Q. Your plan provided for a stock assessment? A. Yes.
"Q. What will happen to the money that is received? A. It will go into the plan —
"The Court: You are going to provide that it shall go to the Detroit Bankers. A. It will be provided for.
"The Court: It seems to me that it should be provided for here. When the creditors and depositors are paid 100 per cent. that these moneys should be returned to the Detroit Bankers.Mr. Sempliner: I don't know as it could be — should be in that way; but now, I think it will be stipulated between the parties right here now that when the RFC has been paid off its loan, that an order may be amended so that the receiver of the Detroit Bankers may have representation on the liquidating board of the corporation. That when the depositors are paid off in full of their claims, plus interest as provided, if there is any equity, that equity shall go to the receiver of the Detroit Bankers. That is agreeable to all parties here as I understand it.
"The Court: Is that so understood? Voice: Mr. Geller agrees to it for the banking department.
"The Court: And Mr. Sullivan, attorney for the conservator?Voice: It is agreeable to the receiver.
"The Court: It is agreed."
The "agreement to be entered into" between the bank and the depositors corporation, as above envisaged in the court's order approving the plan of reorganization, was afterward executed, and provided, among other stipulations, the following:
"If any dividends shall be paid to the trustees upon said shares of stock held by them before the certificates of indebtedness issued or to be issued by the depositors corporation to the waiving depositors, as required by the said plan of reorganization, have been paid in full or funds for such payment have been set aside so as to be available for payment to the waiving depositors, the trustees shall forthwith pay said funds received as dividends to the *Page 337 
depositors corporation. If any dividends shall be paid to the trustees after the said certificates of indebtedness have been fully paid or funds for full payment of such certificates of indebtedness have been set aside, the trustees shall receive such funds in trust for the use and benefit of the waiving depositors, the interest of each waiving depositor to be in the same proportion which the amount waived by him of his claims against the bank bears to the total amount waived by all waiving depositors of their claims against the bank. If after the payment of any dividends to the trustees upon the contingency expressed in the foregoing sentence, the depositors corporation holds no other sums, rights, or properties, the trustees shall distribute any sums received from the depositors corporation as dividends to the waiving depositors according to their respective proportionate interest in the manner hereinafter provided for the distribution of the proceeds of the liquidation or winding up of the depositors corporation by the trustees. If after the payment of dividends to the trustees upon the said contingency, the depositors corporation holds sums, rights or properties, which in the judgment of the trustees are valuable, so that the trustees may receive further sums from the depositors corporation by way of dividends or by way of the liquidation or winding up of the depositors corporation, the trustees may, in their discretion, delay any distribution of the sums received by way of dividends upon the said stock of depositors corporation until they have received proceeds of the liquidation or winding up of the depositors corporation as hereinafter mentioned.
"If and when the certificates of indebtedness issued or to be issued by the depositors corporation to the waiving depositors are paid in full, or funds are set aside for the full payment of the said certificates of indebtedness so that the funds for such payment are available to the waiving depositors, the trustees will cause the depositors corporation to be *Page 338 
liquidated, dissolved and/or wound up to the end that any sums, rights or properties of the depositors corporation will be converted into cash for distribution as hereinafter provided. To accomplish such liquidation, winding up and/or dissolution of the depositors corporation, the trustees may institute or cause to be instituted any suit or action at law or in equity and may employ agents and/or counsel.
"The trustees may pay any expenses of the liquidation, winding up and/or dissolution, including counsel fees, out of the proceeds derived from such liquidation, winding up and/or dissolution; and the trustees may reimburse themselves out of said proceeds for any said expenses paid by them but not out of said proceeds. The trustees shall distribute or cause to be distributed the proceeds of the liquidation, winding up and/or dissolution of the corporation to the waiving depositors. The distributive share of each waiving depositor shall be in the same proportion as the amount waived by him of his claims against the bank bears to the total amount waived by all waiving depositors of their claims against the bank."
The plan of reorganization approved by the court provided, therefore, that the waiving depositors would secure certificates which would entitle them to receive a sum equal tosuch waived amount with interest thereon from the date ofcertificate at the rate of three per cent. per annum. The form of the certificates was to be determined, according to the plan, in the agreement between the bank and the corporation.
However, the agreement, which was executed by virtue of the adoption of the plan of reorganization and the court's approval thereof, provided that after the certificates of waiving depositors had been paid in full, any additional payments received by the trustees appointed to carry out the reorganization would be distributed to the waiving depositors "in *Page 339 
the same proportion as the amount waived by him of his claims against the bank bears to the total amount waived by all waiving depositors of their claims against the bank."
This would give the certificate holders not only payment of 50 per cent. of their claims in cash but also payment in full with interest of the face amount of their certificates and, in addition, a proportionate sharing in the assets of the bank in the hands of the liquidating group. This was not the plan adopted and approved by the court. That plan only provided for payment of 50 per cent. of the claim of the depositor in cash, and payment of the amount waived as shown by the certificate, with interest thereon. In entering the trust agreement to carry out the plan — in the absence of the Detroit Bankers Company, the party most interested in the remaining assets, after the debts of the bank had been paid in full — the parties exceeded their authority, and included therein the provision in question, which was not contemplated by the plan, was contrary to its provisions, and was not approved by the court.
It is contended by appellants that the provision of the plan of reorganization wherein it was set forth that, after the Reconstruction Finance Corporation had been paid in full, the remaining assets would be held and administered for the benefit of the waiving depositors and creditors under the terms of the agreement to be entered into, justifies the provision in the agreement that the remaining assets, after payment in full of the depositors' claims with interest, were to be distributed to the certificate holders.
But the plan stated that the agreement to be entered into was to "contain provisions substantially as follows," and then recites that such certificates will entitle the waiving depositors to a sum equal to the waived amount with interest. Such provision did not envisage the inclusion in the agreement *Page 340 
that there was also to be given to the waiving depositors the remaining assets which had been transferred for the purpose of carrying out the reorganization. The agreement with regard to the foregoing provision is of no effect as to any rights in the assets which the Detroit Bankers Company might otherwise have.
It was sought to show, however, that the Detroit Bankers Company has no right in the remainder of the assets after the depositors have been paid in full and the obligations of the reorganizing group have been liquidated. It is claimed that the stock of the Detroit Bankers Company has been cancelled for failure to pay the stock assessment; that the plan of reorganization, carried out with the approval of the court, embraced an outright conveyance of an indefeasible title to the assets of the defunct bank to the Hamtramck Depositors Corporation, for the benefit of the bank's creditors; that the trial court was precluded from entering the order from which appeal is taken because of expiration of the statute under which the reorganization was effected; that the court could not consider an amendment of the plan as approved by the banking commissioner and the governor; that the order amending the reorganization plan impairs the obligations of the contract between the bank and the depositors corporation; and that plaintiff is guilty of laches in filing his petition.
With regard to the contention that the reorganization plan provided for an outright conveyance of the assets of the bank to the reorganizing agent for the benefit of the bank's creditors, we are unable to agree. Such plan, in its provision that, when such creditors had been paid 50 per cent. of their claims in cash, they were to receive certificates entitling them to payment of the balance of their claims with interest, must be considered as providing for the entire rights to which such creditors were entitled; *Page 341 
and such provision clearly must be read as the intended limitation upon the preceding general language in the plan, setting forth that the assets were to be administered for the benefit of such creditors.
It is unnecessary to discuss at length many of the objections to the amended order. It was entered pursuant to the stipulation in open court. It was fully understood by the parties at the time and, after a full explanation to the trial judge, he agreed that the remaining equities, if any, would go to the Detroit Bankers Company. The order merely carries out the intended plan. The expiration of the statute governing the reorganization of the bank cannot be said to deprive the court of the right to direct payments of assets and funds on hand to those entitled to them. No one else has the right to retain them, and it cannot be said that the statute prevents their distribution in accordance with the rights of those to whom they are due. Whether the stock was properly and regularly cancelled is not of controlling importance. The stockholders of the bank, whether their stock was cancelled in these reorganization proceedings or not, would be entitled to the remaining assets, after payment in full of the creditors' claims, even though such right had not been stipulated in court or expressed in the plan approved by the court. SeeCulp v. First Commercial Savings Bank of Constantine, 288 Mich. 646
. There was no violation of the obligation of contract resulting from the entry of the amended order as the liquidating group had no right to the remaining assets after the payment of the creditors. Under the foregoing circumstances, the claim of laches has no application to this controversy.
Other matters discussed on appeal are unnecessary to our determination.
The order of the circuit court directing the trustees of the Hamtramck Depositors Corporation to *Page 342 
convey to the receiver of the Detroit Bankers Company the outstanding certificates of stock in such depositors corporation, as representing the rights to the balance of the assets remaining after payment of the creditors of the Peoples Wayne County Bank of Hamtramck, is affirmed, with costs to appellee receiver.
SHARPE, C.J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.